IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEAN COLEMAN, et al.,            :      CIVIL ACTION
                                 :      NO. 10-7421
          Plaintiffs,            :
                                 :
                                 :
                    v.           :
                                 :
POTTSTOWN SCHOOL DISTRICT,        :
                                 :
          Defendant.             :


M E M O R A N D U M


EDUARDO C. ROBRENO, J.                      February 21, 2012


## I.    INTRODUCTION

Plaintiffs Jean and David Coleman, as guardians ("Guardians"), Rodney Jones, as a student ("R.J.") (collectively, "Plaintiffs"), have filed an Amended Complaint against Pottstown School District ("Defendant") alleging that Defendant has violated their rights pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1419 ("IDEA"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("§ 504"),

and Title II of the American with Disabilities Act, 42 U.S.C. §
12131 ("ADA").

Based on violations of these statutes, Plaintiffs state
that student R.J. is entitled to compensatory education for the
2006-2007, 2007-2008, and 2008-2009 school years.  Am. Compl. ¶
50. Additionally, Guardians request tuition reimbursement for
expenses incurred for seeking private services for the 2008-2009
school year.

The issue presently before the Court is whether
Plaintiffs should be allowed to supplement the administrative
record with additional discovery produced after the conclusion of
the Due Process Hearing. For the reasons that follow, the Court
will grant in part and deny in part Plaintiffs' motion to
supplement the administrative record.


**II.   BACKGROUND**

    A.   <u>Factual Background</u>

Born on April 23, 1991, R.J. grew up in Baltimore,
Maryland. In his youth, R.J. was subject to violence and abuse,
witnessed his brother being killed and, at age eight, suffered a
traumatic head injury after being hit in the head with a lead
pipe. After continual poor academic performance in the Baltimore
public schools, R.J. underwent evaluations and testing which led

to his diagnosis of suffering from a Traumatic Brain Injury. After R.J.'s learning disability diagnosis, R.J. was placed in a private school for students with reading learning disabilities. Am. Compl. ¶¶ 16-19.

On July 5, 2006, Guardians obtained, from Maryland Family Court, "sole legal and physical custody" of R.J. and he moved to Pottstown, Pennsylvania, to live with them and their son, Michael Coleman. In 2006, R.J. entered the Pottstown School District, which accepted him as a student after Plaintiffs provided "substantial documentation and other information regarding R.J.'s status and needs." Id. at ¶¶ 20-21.[1]

In the 2006-2007 and 2007-2008 school years, R.J. performed poorly academically and had disciplinary problems. Despite R.J.'s troubles, Plaintiffs allege that Defendant repeatedly refused to perform a Functional Behavioral Assessment on R.J. Due to Guardians' dissatisfaction with R.J.'s Individualized Educational Plan ("IEP"), Guardians requested that R.J. attend Lindamood-Bell Learning Center ("LMB") for direct reading and math instruction. After further discussions regarding placement of R.J. in LMB, Defendant denied Plaintiffs' request to place R.J. at LMB. Id. at ¶¶ 24-26. Despite Defendant's refusal,

---

[1] Plaintiffs aver that Defendant chose to rely on private evaluations from 2005, as opposed to conducting its own evaluation of R.J.'s condition. Am. Compl. ¶ 23.

Guardians placed R.J. at LMB at the beginning of the 2008-2009 school year. Defendant responded to R.J.'s placement at LMB by un-enrolling R.J. from the district. Id. at ¶ 27.

In January 2009, Plaintiffs met with Defendant to discuss reimbursement. It was agreed that R.J. would be re-enrolled in Pottstown School District and an independent evaluator would perform an evaluation to determine whether R.J. needed further special education. After R.J. was re-enrolled, Plaintiffs found an independent evaluator who performed an evaluation. Defendant, however, refused to pay for the evaluation at which point Plaintiffs commenced a Due Process Hearing. Id. at ¶¶ 30-31.

B.   Procedural Background

Plaintiffs filed a Due Process Complaint against Defendant on or about May 13, 2009. A Special Education Hearing Officer, Deborah DeLauro, dismissed Plaintiffs' Due Process Complaint on June 18, 2009, for lack of standing. Thereafter, on September 15, 2009, Plaintiffs filed a federal complaint in this Court appealing the Hearing Officer's decision. That complaint was filed under Civil Action No. 09-4179. On November 3, 2009, Defendant filed a motion to dismiss for lack of standing. On February 8, 2010, this Court denied Defendant's motion to dismiss

for lack of standing and remanded the case to the Hearing Officer to hold a hearing in the matter consistent with the Court's order.

Pursuant to the Court's order, a hearing was held over five days in front of Hearing Officer Kelly A. Skidmore. On September 24, 2010, the Hearing Officer issued an order finding that the District, at no time, denied student R.J. a FAPE and denied Plaintiffs' requested relief. Thereafter, on April 29, 2011, Plaintiffs filed an Amended Complaint against Defendant requesting that this Court reverse the decision of the Hearing Officer. ECF No. 15.

In response to Plaintiffs' amended complaint, Defendant originally filed a motion to dismiss; however, the motion was denied on June 29, 2011. ECF No. 25. Thereafter, Defendant filed an answer with six affirmative defenses and a counterclaim. ECF No. 26.

On June 29, 2011, upon learning that additional discovery was produced after the conclusion of the Due Process Hearing, the Court ordered the parties to file a joint report outlining their positions as to: (1) the nature of the additional discovery and whether it includes educational documents; and (2) whether the Court should remand the case to the Hearing Officer,

receive the additional evidence at an evidentiary hearing, or resolve the case without any such hearings. ECF No. 25.

A conference was held on August 19, 2011 to assess the parties' status and how they wished to proceed. The parties submitted a joint report on July 29, 2011. Joint Report, ECF No. 27. According to the parties' joint report, the evidence produced consisted of two separate responses to Plaintiffs' request for production of documents. The first, produced on or about May 25, 2011, consisted of sixty-five pages of materials. See Joint Report 3. The second, produced on or about June 16, 2011, consists of two-hundred and seven pages of materials. Id. at 3-4.

The Court found that although the content of the new documents were briefly detailed in the parties' joint status report, it was impossible to apply the factors developed in Antoine M. v. Chester Upland Sch. Dist. to the facts of the case without additional information. 420 F. Supp. 2d 396, 402 (E.D. Pa. 2006) (Robreno, J.) (suggesting inquiry into (1) why the evidence was not submitted below; (2) whether the evidence was deliberately withheld for strategic reasons; (3) whether the introduction of additional evidence is prejudicial to the other party; and (4) the potential impact of the new evidence on the administration of justice). Thus the Court ordered Plaintiffs to file an Amended Motion to Supplement the Record with an Expert

Report discussing each document it would like to add to the administrative record following the guidance of Antoine M. ECF No. 29.

Plaintiffs submitted their Amended Motion to Supplement the Record on September 2, 2011. Pl.'s Am. Mot. to Supplement the R., ECF No. 30. Defendant submitted a response on September 16, 2011. Def.'s Resp. to Pl.'s Am. Mot. to Supplement the R., ECF No. 33. The Court has considered the motions and supportive filings, and the matter is now ripe for disposition.

## III. DISCUSSION

Plaintiffs argue that the Court should consider the additional records because they are relevant and were previously unavailable to Plaintiffs. According to Plaintiffs, the evidence shows that R.J. had significant deficiencies and emotional difficulties that tend to show that Defendant erroneously failed to conduct a functional behavioral assessment, train school personnel, and provide sufficient psychological therapy and counseling services. Consequently, Plaintiffs believe the Court should consider the records regardless of whether they constitute "educational records" under the Family Educational Rights and

Privacy Act ("FERPA"), and ask the Court to schedule a hearing to consider the new evidence.[2]

Defendant responds that, with the exception of "the documents produced for the first time by Michael Coleman [the son of Guardians] during his testimony at the Due Process Hearing," which were not admitted at the Due Process Hearing, the new evidence should not be admitted into the record before this Court. Defendant argues that the documents submitted by Michael Coleman should be considered during appeal because statements provided by Michael Coleman are inconsistent with his prior testimony.[3] As to the other evidence, Defendant argues that it should not be permitted because the additional documentation and expert report are largely cumulative of that presented before the Hearing Officer, are irrelevant, or are improper. If, however, this evidence is permitted, Defendant requests the ability to supplement the record with additional testimony to discuss the various documents and to respond to the expert report.

A.   Standard of Review

---

[2]  However, Plaintiffs argue that, to the best of their knowledge, the documents do constitute educational records in any event. As to the latter point, Defendant appears to take the position that Plaintiffs merely requested "educational records" prior to the hearing and that some of the documents that were produced after the Due Process Hearing do not so qualify. See Def.'s Resp. to Pl.'s Am. Mot. to Supplement the R. 8.

[3]  The Plaintiffs do not oppose the admission of this Document. Pl.'s Am. Mot. to Supplement the R. 11 n.18

The IDEA provides that the Court in a judicial review action shall consider the records of the administrative proceeding and also "hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii). While this mandatory language does not require the Court to consider additional evidence following an administrative due process hearing, it is "left to the discretion of the trial court" to decide whether the additional proffered evidence should be admitted. Antoine M., 420 F. Supp. 2d at 402; see J.L. v. Ambridge Area Sch. Dist., 622 F. Supp. 2d 257, 269 (W.D. Pa. 2008) ("Despite the mandatory language of the statute, the determination of whether or not to allow the admission of additional evidence . . . is a determination left to the trial court's discretion.").

As this Court has recognized, "the court is charged with determining whether the proffered evidence is 'relevant, non-cumulative, and useful in determining whether Congress' goal has been reached for the child involved.'" Antoine M., 420 F. Supp. 2d at 402 (citing Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 760 (3d Cir. 1995)). To undertake this inquiry, "a court must look at the evidence or testimony proffered in the context of the case." Id. Accordingly, some courts have required specific offers of proof as to permit the court to "undertake a thorough examination of the current record to determine if such proffered

evidence is supplemental, relevant, non-cumulative and useful."
Ambridge Area Sch. Dist., 622 F. Supp. 2d at 269.

Although a court may not summarily dismiss a party's
proffered evidence before evaluating its content, "neither may a
court grant carte blanche to a party to introduce evidence that
was not offered at the administrative hearing, and thus render
the administrative proceedings a mere formality." Antoine M., 420
F. Supp. 2d at 403. "To negotiate this statutorily prescribed
deference, a court must determine whether the party introducing
the additional evidence has presented a sufficient justification
for not proffering the evidence at the administrative hearing."
Id. While there is no bright line rule to determine whether
additional evidence should be permitted, the following factors
are among those that should be considered: (1) why the evidence
was not submitted below; (2) whether the evidence was
deliberately withheld for strategic reasons; (3) whether the
introduction of additional evidence is prejudicial to the other
party; and (4) the potential impact of the new evidence on the
administration of justice. See id.

B.   Evidence that Plaintiffs Seek to Introduce

Plaintiffs seek to admit the following records that were produced for the first time following the initiation of this lawsuit. The additional documentation is as follows:

1. School District Behavioral and Discipline Records, attached as Exhibit "E";

2. Email dated January 7, 2009, from Pottstown School District Special Education Reading Specialist Judith Miller to Pottstown School District Special Education Supervisor, Rita Cohen, attached as Exhibit "F";

3. Miscellaneous emails between Michael Coleman and Pottstown School District personnel, attached as Exhibit "G";[4]

4. Student workbooks and other student work product, attached as Exhibit "I";

5. Email circa January 10, 2007 from Rita Cohen to Judith Miller, attached as Exhibit "J";

6. Baltimore City Public School System Progress Report from February, 2006, attached as Exhibit "K";

7. Baltimore City Public School System Specific Learning Disability Report, attached as Exhibit "L";

8. Student Profile, attached as Exhibit "M";

9. Baltimore City Public School System School Social Worker's Progress Reporting Form dated February 26, 2006, attached as Exhibit "N"; and

---

[4] In the parties' July 29, 2011, Joint Report, Defendant indicated a desire to supplement the record with the July 23, 2009, letter from Michael Coleman to Elizabeth Sullivan. Defendant reinstated that desire in its response to Plaintiffs' Motion. Def.'s Resp. to Pl.'s Am. Mot. to Supplement the R. 1 n.1. Plaintiffs have no objection and attached that letter as Exhibit "H". Pl.'s Am. Mot. to Supplement the R. 11 n.18. Thus, the letter will be allowed to supplement the record as Exhibit H.

10. Testing Information Local School System Testing Record, attached as Exhibit "O".

The Court now turns to analyze each exhibit to determine whether Plaintiffs have provided a sufficient justification for not providing the evidence at the administrative hearing.

1. <u>The School District's Behavioral and Discipline Records (Ex. E), January 7, 2009, Email from Miller to Cohen (Ex. F), and Emails between Michael Coleman and School District Personnel (Ex. G).</u>

Plaintiffs argue that the School District produced the School District's Behavioral and Discipline Records (Ex. E) and the January 7, 2009, Email from Miller to Cohen (Ex. F) for the first time in response to Plaintiffs' Requests for Production of Documents, even though those documents were responsive to Plaintiffs' November, 2008, record requests before the Due Process Hearing. Pl.'s Am. Mot. to Supplement the R. 11. With regard to the emails between Michael Coleman and the School District Personnel (Ex. G), the School District produced those records for the first time in response to Plaintiffs' Requests for Production of Documents, and Plaintiffs also attest that they did not have these documents at the time of the Due Process Hearing. Coleman Aff. ¶ 5, Pl.'s Am. Mot. to Supplement the R. Ex. P. Furthermore, Plaintiffs argue that all of these documents

are "highly relevant" because they demonstrate the ongoing and continuous nature of the behavioral problems that R.J. experienced at school and tend to show that Defendant erroneously failed to conduct a functional behavioral assessment ("FBA").

Defendant responds that all of the information available in these documents was well understood by the Hearing Officer. Specifically, Defendant states that the Hearing Officer was aware of the student's behavior issues and found that the Defendant had addressed the behaviors or was unable to change the underlying issues which were causing the behaviors. Def.'s Resp. to Pl.'s Am. Mot. to Supplement the R. 6.

As the Hearing Officer explained, "[a]n FBA is a process of gathering information about a specific behavior of concern in order to identify the function of the behavior and develop strategies for "eliminating target behaviors, developing positive proactive behaviors and increasing academic achievement." Hearing Officer Decision and Order 11, Pl.'s Am. Mot. to Supplement the R. Ex. R. In the interim Individualized Education Program ("IEP") for R.J., the IEP team noted that R.J. was "at risk for emotional problems" and determined that, "[i]f behavioral problems arise, an FBA will be done." Id. The Hearing Officer found with respect to R.J.'s behavior that "there are a few instances over the course of the 2006-07 school year when

Student missed some assignments, and Student received a detention for talking in class and an in-school suspension for swearing." Id. at 6. However, the Hearing Officer determined that R.J. did not require an FBA in the 2006-2007 school year because "[t]he Parents do not suggest, nor does the evidence reflect, that Student was demonstrating problematic behaviors during school, including making verbal and physical threats to peers and staff, which indicated a need for an FBA by the District." Id. at 11. The Hearing Officer further recognized that even though R.J.'s behavior deteriorated in the fall of 2007, "the persons who were most familiar with Student's behavior at school, provided credible testimony that Student's problematic behavior was effectively managed at school." Id. at 12-13.

The additional records provide information that R.J. was generally off task, engaged in excessive talking, interrupted teachers, had attention issues, refused to do work, was disruptive and disrespectful to teachers, slept in class, and refused to cooperate. Pl.'s Am. Mot. to Supplement the R. 14. Defendant argues that none of this information is new and even if the Plaintiffs are now positing that these behaviors should have resulted in an FBA, this is a theory that was not pursued at the hearing and thus should not be permitted on appeal. Def.'s Resp. to Pl.'s Am. Mot. to Supplement the R. 7.

Despite Defendant's insistence that these documents are cumulative, the Plaintiffs did not have access to these records before the hearing, nor could they refer to them during their testimony because they did not have personal knowledge of all of the behaviors occurring at school as opposed to at home. Furthermore, even though the Defendant insists that the Hearing Officer was well aware that the Student engaged in all of these behaviors, it appears that the documentation of the types of behaviors R.J. was engaging in at school goes beyond the types of behaviors discussed in the hearing. Whether these behaviors qualify as enough evidence to have resulted in an FBA is a question more fully resolved on reviewing the record as a whole. However, contrary to what Defendant argues, Plaintiffs are not positing a new theory for relief, but are only offering supplemental evidence of R.J.'s emotional and behavioral state that allegedly called for the Defendant to perform an FBA. See Antoine M., 420 F. Supp. 2d at 403 (providing the example of introducing a "new theory under which [a party] will be entitled to relief" as a factor against allowing additional evidence).

Plaintiffs have presented sufficient justifications to introduce the proffered documents (Exs. E[5]-F[6]) that were not

---

[5] With respect to Exhibit E, the Defendant maintains that some of the records were notes kept by an individual teacher and, as a result, were not education records required to be produced. Def.'s Resp. to Pl.'s Am. Mot. to Supplement the R. 8. Under the

presented below, because the proffered documents are non-cumulative and relevant and will assist the Court in its determination of whether the District properly assessed R.J.'s behavioral needs pursuant to the IDEA.

Exhibit G, which consists of emails between Michael Coleman[7] and School District personnel also document some of these issues. Defendant insists that Michael Coleman testified to much of the information presented through these emails in the

---

Family Educational Rights and Privacy Act ("FERPA"), educational records are records that are "(1) [d]irectly related to a student; and (2) [m]aintained by an educational agency or institution or by a party acting for the agency or institution." 34 C.F.R. § 99.3. FERPA also exempts certain documents from being educational records, namely those "[r]ecords that are kept in the sole possession of the maker, are used only as a personal memory aid, and are not accessible or revealed to any other person except a temporary substitute for the maker of the record." Id. Aside from conclusively stating that these notes were not educational records, Defendant does not offer any support for its position. Moreover, it does not appear that these notes fall into that exception because many of the details contained in the notes are later reproduced in summary reports.

[6] Exhibit F is an email from Pottstown School District Reading Specialist Judith Miller concerning R.J.'s behavioral problems. Defendant appears to believe that the evidence should not be considered by the Court unless (1) it existed in the School District's possession at the time of the hearing; and (2) was requested by Plaintiffs at such time. Defendant is wrong inasmuch as it implies that such extensive limitations to the admission of new evidence apply. After all, the IDEA provides that the Court in a judicial review action shall consider the records of the administrative proceeding and also "hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii).

[7] Michael Coleman is R.J.'s foster brother and is referred to throughout the materials as the "Student Advocate."

hearing. However, Michael Coleman attests that he did not have these documents at the time of the Due Process Hearing. Coleman Aff. ¶ 5. Even if Michael Coleman did not have these documents, he had the opportunity to testify about the content of these documents and his regular communication with the Defendant regarding R.J.'s behavior at home and at school. Thus, Plaintiffs have not presented sufficient justification for the introduction of these emails because while they are relevant, they are cumulative of testimony presented at the hearing.

In sum, the Court will allow Plaintiffs to supplement the record with Exhibits E and F, but not Exhibit G.


2.   Student's Work Product (Ex. I)

With regard to the student workbook and work product, Plaintiffs argue that these documents are relevant and useful because they demonstrate not only the degree to which R.J. was struggling with various aspects of writing and reading but also the need for a variety of additional goals in his IEP. Student Workbook, Pl.'s Am. Mot. to Supplement the R. Ex. I.; Pl.'s Am. Mot. to Supplement the R. 17-18. Defendant contends that Plaintiffs' arguments were made to and rejected by the Hearing Officer and moreover the actual work product is of limited probative value.

These documents are not cumulative because Plaintiffs had only one sample of Rodney's writing from September 2007 to submit at the time of the hearing and certainly nothing as comprehensive as what the Defendant subsequently produced. Furthermore, it would be helpful to the Court in discerning whether R.J.'s IEPs contained measurable annual goals to meet all of his needs that arose from his disability so that he could be involved, participate, and progress in the general curriculum. See, e.g., 34 C.F.R. § 300.347(2)(A). Although Defendant contends that the actual work product is of limited probative value and the information provided is merely cumulative of arguments proposed at the hearing, a student's actual work product provides a fuller picture of a student's performance, progress, and receipt of a "meaningful educational benefit," alongside his or her standardized test scores. See Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999). For these reasons, the Court will allow the student's work product to supplement the record.

3.  Email circa January 10, 2007 from Rita Cohen to Judith Miller (Ex. J)

Plaintiffs would like to add an email from January 10, 2007, from Rita Cohen to Judith Miller because it documents R.J.'s need for summer programming in the subject of reading. Plaintiffs argue that this is another important piece of evidence

that helps demonstrate that Defendant denied R.J. FAPE by failing to afford him extended school year ("ESY") programming and services.

Defendant argues, and the Hearing Officer found that "[t]he District offered to provide Reading tutoring to Student over the summer of 2007 but student did not take advantage of that tutoring." Hearing Officer Decision and Order ¶ 29. As such, the Defendant contends that the email serves no purpose, as the claim by the Plaintiffs that ESY was not offered is simply inaccurate.

While Plaintiffs acknowledge that the Defendant offered R.J. tutoring over the summer which he did not accept, they maintain that it was not ESY programming, consisted of only six days, and was sparse "when most ESY programs last between four to six weeks." Pl.'s Am. Mot. to Supplement the R. 19 n.28. The Hearing Officer rejected Plaintiffs' contention that the Defendant failed to provide ESY programming to R.J., however, the email, which was produced after the hearing, suggests "an in-district summer program in reading" for R.J. over the summer. Given that Plaintiffs did not have this email for the Due Process Hearing, and it provides evidence that could support their claim that the Defendant did not provide R.J. with appropriate ESY

programming, the Court will allow this email to be added to the record.

>    4.   Baltimore City Public School System Progress Report
>         from February 2006 (Ex. K), Baltimore City Public
>         School System Specific Learning Disability Report
>         (Ex. L), Student Profile (Ex. M), Baltimore City
>         Public School System School Social Worker's Progress
>         Reporting Form Dated February 26, 2006 (Ex. N), and
>         Testing Information Local System Testing Record (Ex.
>         O)

Plaintiffs seek to have admitted into the record a number of documents which were obtained from the School District of Baltimore after the Special Education Due Process Hearing. The Plaintiffs argue that the records are relevant and not cumulative because they demonstrate the need for a variety of interventions for R.J. at the point of his enrollment with the Defendant, including the need for (a) a math reasoning goal, (b) spelling, reading comprehension, and writing goals (c) specific behavioral interventions to address his tendency to lose focus, get distracted, and fail to stay on task, (d) one-on-one instruction in a variety of core subjects, similar to what he received at Lindamood Bell, and (e) ESY, given his tendency to regress.

Defendant responds that Plaintiffs' request must be denied as these documents provide information that was included in the record at the Special Education Due Process Hearing and, thus, are duplicative of evidence that was considered by the

Hearing Officer or were documents not available to the Defendant and, thus, have no relevance to the issue before this Court. Def.'s Resp. to Pl.'s Am. Mot. to Supplement the R. 12. The Defendant states that these records were not available to the District at the time that the IEP at issue was developed. The evidence at the hearing established that efforts were made by the District to obtain records, but the records at issue were not provided to the District.[8]

Plaintiffs assert that they could not have obtained these records through an administrative subpoena because the Pennsylvania Special Education Due Process Hearing Officers do not have jurisdiction to command the production of documents outside the geographic borders of the Commonwealth of Pennsylvania.

While the Plaintiffs have a justification for why these records were not submitted below, Defendant insists that it did not have access to these records in completing R.J.'s IEPs. The records are only relevant to the extent that they corroborate Plaintiffs' contention that R.J. needed a variety of interventions to ensure he received a FAPE. However, there is no evidence that the Defendant had access to these records in completing its own IEP evaluations of R.J. Thus, the relevance of

---

[8]  The Defendant did not provide a citation to the record to support its argument in this respect.

these documents appears minimal to an evaluation of whether

Defendant failed to provide adequate IEPs or educational services

required by the terms of his IEPs. Accordingly, Court will deny

the addition of these records.

    5.   Dr. Bloomfield's Report and Curriculum Vitae (Exs.
         C, D).

         Dr. Bloomfield is being proffered to testify regarding

two areas. First, she will testify regarding the records

identified in Plaintiffs' Amended Motion to Supplement, and what

those records reveal regarding whether the School District

afforded Rodney Jones FAPE. Second, she will also provide some

limited testimony regarding certain factual findings that the

Hearing Officer made in her September 24, 2010, decision and

order that according to Plaintiffs were based upon

misunderstandings of critical concepts in the very specialized

educational subfields of special and psycho-education.

         Defendant objects to Plaintiffs' desire to supplement

the record with Dr. Bloomfield's report because the report

attacks the Hearing Officer's decision and misstates findings

made by the Hearing Officer. Defendant further argues that

Plaintiffs have not presented sufficient justification for why

the evidence was not admitted during the administrative hearing.

Plaintiffs have provided sufficient justification for not proffering Dr. Bloomfield's testimony at the administrative hearing because Plaintiffs did not have access to the documents provided in discovery which support the expert's opinion. Moreover, there could be other valid reasons for not "presenting some or all expert testimony before the state agency. Experts are expensive—the parties at the state level may feel that their cases can be adequately made with less backup." Burlington v. Dept. of Educ. for Commw. of Mass., 736 F.2d 773, 790 (1st Cir. 1994). What Plaintiffs are seeking is to provide evidence to cultivate a fuller record here in order to assist the Court in determining whether Congress' goal in enacting the IDEA has been reached for R.J. and they should be allowed to do so through the testimony of Dr. Bloomfield. Nonetheless, the bases of Dr. Bloomfield's opinion should be limited solely to the Due Process Hearing record and the documents which the Court has allowed to be added to the administrative record.[9]

---

[9] Defendant also argues that Dr. Bloomfield's opinion should be excluded because it presents a new legal theory for relief in stating that R.J.'s IEP was deficient because private placement was the only proper placement for R.J. Def.'s Resp. to Pl.'s Am. Mot. to Supplement the R. 8-9. The Court notes Defendant's objection, but as Plaintiffs have presented a sufficient justification for not offering this evidence at the initial administrative hearing, the Court will allow Plaintiffs to submit a revised version of the report in accordance with this Memorandum and will evaluate Defendant's objection at the time of the hearing in the context of the testimony being offered.

Moreover, Dr. Bloomfield's expert report will not be admissible to supplement the administrative record to the extent that it is a "post-hoc review of the Hearing Officer's decision, a task that is charged to this Court." Roe v. Nevada, 621 F. Supp. 2d 1039, 1048; 20 U.S.C. § 1415(i)(2) (2006). Dr. Bloomfield's opinion on whether the administrative hearing officer appropriately applied the law is not a proper subject for an expert evaluation. See Lebron v. North Penn Sch. Dist., 769 F. Supp. 2d 788, 794-95 (E.D. Pa. 2011). Thus, Dr. Bloomfield will not be allowed to present evidence evaluating the hearing officer's abilities or whether the administrative hearing officer complied with the law.

In sum, Dr. Bloomfield's report can be admitted only to the extent that it evaluates what the fuller administrative record reveals regarding whether the School District afforded R.J. a FAPE.

## IV. CONCLUSION

For the reasons provided above, the Court will grant grant in part and deny in part the Plaintiffs' Amended Motion to Supplement the Record. Specifically, the Court will allow the Plaintiff to supplement the record with the School District's Behavioral and Discipline Records (Ex. E), the January 7, 2009

email from Miller to Cohen (Ex. F), the Student's Workbook and Work Product (Ex. I), and the January 10, 2007, email from Rita Cohen to Judith Miller (Ex. J). The Court will also allow Defendant's unopposed request to supplement the record with the July 23, 2009, letter from Michael Coleman to Elizabeth Sullivan (Ex. H). Defendant will be permitted to refute the claims made by Plaintiffs about these documents through additional testimony if that is deemed necessary.

The Court will also allow Plaintiffs to supplement the record with Dr. Bloomfield's expert report as long as it is amended only to reflect her opinions in light of the newly admitted evidence in the context of the administrative record. Defendant will also be given the opportunity to cross-examine this expert and, if needed, present testimony to rebut the opinions expressed by the expert or the underlying facts used to support those opinions.

The Court will deny the addition of the following records: Emails between Michael Coleman and School District Personnel (Ex. G); Baltimore City Public School System Progress Report from February 2006 (Ex. K); Baltimore City Public School System Specific Learning Disability Report (Ex. L); Student Profile (Ex. M); Baltimore City Public School System School Social Worker's Progress Reporting Form Dated February 26, 2006

(Ex. N); and Testing Information Local System Testing Record (Ex. O).

An appropriate order shall follow.